UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    v.                            )<br>)<br>BRUCE W. WILLIAMS       )<br>)<br>                                      ) | Hon. Thomas J. McAvoy<br>Sr. U.S. District Court Judge<br>Docket No. 19-CR-074 (TJM) |

### SENTENCING MEMORANDUM

**Preliminary Statement**

Bruce Williams comes before this court for sentencing following his waiver of indictment and plea of guilty pursuant to a plea agreement governed by Fed. R. Crim. P. 11(c)(1)(C) to a two-count information charging distribution and receipt of child pornography in violation of 18 U.S.C. §2252A(a)(2)(A). Mr. Williams's guilty plea arises in connection with his receipt and distribution of child pornographic images over the internet on two computers using a peer-to-peer file sharing program.

Counsel for Mr. Williams has submitted to the probation office a letter (Exhibit 1, attached hereto) articulating his position on the legal matters and the factual contents of the presentence investigation report ['PSR'], including objections to and clarifications of the factual contents. Those objections and clarifications have been incorporated in the addendum to the PSR. Mr. Williams seeks no evidentiary hearing on objections affecting the applicable sentencing guidelines.

Mr. Williams asks the Court to accept the plea agreement and impose the agreed-upon sentence. Considering the facts and circumstances of this case, including Mr. Williams's

1

extraordinarily tragic upbringing, the agreed-upon sentence of 240 months imprisonment—an extraordinarily long period of imprisonment by any measure—followed by lifetime supervised release is sufficient to serve the purposes of federal sentencing.

I.   **OBJECTIONS/CLARIFICATIONS TO THE PRESENTENCE INVESTIGATION REPORT.**

Mr. Williams's position regarding the PSR is attached here as Exhibit 1, and the objections/clarifications raised by him have been included in an addendum to the PSR. Mr. Williams does not seek an evidentiary hearing on any objections, which he simply seeks to preserve for the record.

Regarding recent notifications regarding requests for restitution, Mr. Williams objects as more fully set forth below.

II.   **THE COURT'S SENTENCING AUTHORITY AND DUTIES.**

The parties have entered into a "binding" plea agreement pursuant to Rule 11(c)(1)(C), which Mr. Williams asks the Court to accept. The sentencing guidelines provide the following guidance to the Court on its consideration of the plea agreement:

> (c)   In the case of a plea agreement that includes a specific sentence (Rule 11(c)(1)(C)), the court may accept the agreement if the court is satisfied either that:
>
>   (1)   the agreed sentence is within the applicable guideline range; or
>
>   (2)   (A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form.

U.S.S.G. §6B1.2(c).

The statutory maximum on each count in the information is 20 years. In the absence of a legal basis to "stack" sentences for each count, the agreed-upon sentence, 240 months, would be

the equivalent of the guideline sentence.  Should the Court determine that "stacking" sentences on each could would be permissible to achieve a guideline sentence in excess of the statutory maximum sentence of imprisonment on one count, then a sentence of 240 months would be outside the applicable guidelines range for justifiable reasons.  In addition to the reasons set forth by the government, further justifiable reasons, including Mr. Williams's tragic history and characteristics, are set forth below.

**III.   THE COURT SHOULD IMPOSE THE AGREED-UPON SENTENCE OF 240 MONTHS IMPRISONMENT WITH LIFETIME SUPERVISED RELEASE.**

   A.   *History and Characteristics of Bruce Williams.*

Bruce Williams, 38 years old, is the product of a life of extraordinary disadvantage and suffering.  He is the product of a broken home and biological parents who were never in a stable relationship.  The dysfunction in which Bruce was raised was not at all typical for a person with separated parents.  Instead, Bruce was perpetually a crime victim for whom no one came to the rescue.

Bruce's parents separated when Bruce was two years old, and Bruce's father was awarded custody of Bruce.  Bruce recalls from a very young age being raised by an alcoholic father who would experience fits of uncontrollable rage.  When young Bruce was 6 years of age, his father would drink heavily, become angered by something, and then inflict violent assaults on Bruce.  The father would punch young Bruce wherever on Bruce's body that a punch could land.  From years of severe punches to the face, Bruce has nerve damage in his face, causing a loss of sensation.  He also has memory problems to this day.  Bruce report that his two brothers also were violently beaten.

Physically violent beatings were the least of the crimes committed against Bruce.  He was sexually abused by his father in a variety of ways from the time of Bruce's earliest memories.

That sexual abuse occurred over a period of years. He recalls first being made to touch his father's genitals. Eventually, Bruce's father sodomized Bruce. Bruce recalls his father saying, "I'm going to show you how to please a woman," before anally penetrating young Bruce. Bruce was sodomized by his father more times than Bruce can quantify.

Although Bruce lived primarily with his father, who had primary physical custody, Bruce would bounce back and forth between his biological parents over Bruce's younger years. When Bruce was 9 or 10 years old, his mother sought to move into the home with Bruce's father. Bruce recalls learning that his mother's purpose for moving in was a ruse; she acted like she sought to reconcile with Bruce's father in an attempt to undo the custody award in favor of the father. Bruce experienced a respite in the violent beatings when his mother was around. Eventually, Bruce's mother took him and his brothers to another home for about a year.

Then, one day when Bruce was around 11 years old, his mother drove him and his brother to his Aunt Jenny and Uncle David Williams's home in eastern Rensselaer County. His mom told the boys that they would have to stay with Aunt Jenny for the weekend while Bruce's mother went on a short trip. Bruce's mother then vanished for six years. Apparently, she became a fugitive after learning she was being investigated for allegedly stealing Social Security checks of Bruce's grandmother. Bruce had no contact with his mother for those six years.

Although Bruce's aunt and uncle petitioned for legal custody of Bruce and his brothers—apparently due to the realization that Bruce's father was unfit—Bruce's life with his aunt and uncle was no less traumatizing than life with his father. Aunt Jenny's idea of discipline was sadistic. If she was displeased with Bruce and his brothers, she would whip the boys with a horse whip. In the winter, she would banish them to the outside in their underwear and spray them with a water hose. Bruce and his brothers were not protected by their uncle, who was

cowed by his wife.  (The character letter of Bruce's brother Dennis Williams, to be filed separately pursuant to Court rules, corroborates the extraordinary damaging upbringing the two of them endured.)

While living in the home of his aunt and uncle, Bruce was exposed to his older male cousins, who also sexually abused Bruce.  Those older male cousins made Bruce perform oral sex upon them.  They also anally sodomized him.

Bruce recounted an episode that highlights the mostly hidden nature of the horrors he endured and how his rescue from those horrors would never happen.  On one occasion, he had written with pen on his hand while in school.  When Aunt Jenny saw the ink on his hand, she became enraged.  She scrubbed his hand with a steal-wool pad, tearing off Bruce's skin.  While in school the next day, the school nurse saw the hand and learned from Bruce what had happened.  The school nurse called CPS, who made a visit to Aunt Jenny's home.  CPS's visit did not result in the rescue of Bruce.  In fact, to Bruce's knowledge, nothing was done by CPS.  But the visit did enrage Aunt Jenny to the point that she beat Bruce all over his body with a serving spoon.  He learned from that experience that he would be better off not telling anyone about the assaults he received because telling about it just brought about worse punishment.

Bruce Williams experienced an upbringing that no child should endure.  Time after time after time, he was victimized, and no one came to his rescue.  It is understandable that the horrors and the twisted developmental influences upon him have affected him in significant ways.  He endured that extraordinarily troubling upbringing with no rescue, no help, no treatment or support that a young child, teenager or young adult would have needed to overcome those horrifying experiences and their effects.

Not surprisingly, Bruce has suffered from depression for the entirety of his life. Unfortunately, he did not received adequate treatment for depression or any other mental health conditions in time for him to have a chance to live a semblance of a normal life. The traumas of his childhood continued to haunt Bruce throughout his adulthood. He sought therapy during the two years prior to his arrest in this case, trying to understand the forces that have weighed on him for far too long. If only he had the benefit of rescue and therapy as a child, he likely would have been able to avoid the conduct at issue here.

Hopefully Bruce will have access to effective treatment during the extraordinarily long term of imprisonment he will face and develop the tools to cope with the hardships he has endured.

### B.	The Court's sentencing options.

The Second Circuit recently has observed about cases involving receipt and distribution of child pornography, based on "the latest statistics on the application of sentencing enhancements," that particular §2G2.2 enhancements are "all-but-inherent" to possession of child pornography, including "victim under the age of 12" (applied in 95.9% of cases); "image of sadistic or masochistic conduct…" (applied in 84.5% of cases); "offense involving 600 or more images" (applied in 79.3% of cases); "use of a computer" (applied in 95% of cases). United States v. Jenkins, 854 F.3d 181, 190 (2d Cir. 2017). Those guidelines specific offense characteristics generate a total of 13 offense levels. In the absence of certain of those offense levels which are "all-but-inherent" in child pornography cases, the applicable sentencing guideline here would be substantially less than that computed in the PSR; on that basis, the agreed-upon sentence of imprisonment, 240 months, arguably would not be lower than the computed guideline range in the PSR.

*1. Restitution.*

Mr. Williams objects to the PSR's assertions regarding restitution arguable owed. The PSR information appears simply to restate demands for restitution at particular amounts by victim representatives.

The Supreme Court held in *Paroline* that "[r]estitution is… proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." Paroline v. United States, 134 S.Ct. 1710, 1722 (2014). In a case like this, "[A] court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." Id. at 1727.

According to another Court in the Northern District:

> The government bears the burden of proving the amount of a victim's losses by a preponderance of the evidence. *See id.* at 1729 ("[T]he government ... bears the burden of proving the amount of the victim's losses[.]" (citing 18 U.S.C. § 3664(e)); *United States v. Kennedy,* 643 F.3d 1251, 1263 (9th Cir.2011) ("[T]he government must prove by a preponderance of the evidence that [the defendant's] offenses proximately caused the losses incurred by [the victims]."); *United States v. Aumais,* 656 F.3d 147, 152 (2d Cir.2011) (same). "[A] restitutionary award under § 2259 will be improper if the district court must engage in arbitrary calculations to determine the amount of [a] victim's losses." *Kennedy,* 643 F.3d at 1261 (citation omitted); *see also Paroline,* 134 S.Ct. at 1729 ("Restitution orders should represent 'an application of law,' not 'a decisionmaker's caprice, ... and the approach articulated above involves discretion and estimation." (citation omitted)).

United States v. Miner, 2014 WL 4816230 (N.D.N.Y. 2014).

Here, the government's documentation (at least that attached to the PSR) is insufficient to meet the government's burden under Paroline. Accordingly, the Court should deny restitution.

**CONCLUSION**

Based upon the foregoing and pursuant to the Rule 11(c)(1)(C) binding plea agreement, this Court should sentence Mr. Williams to the agreed-upon sentence of 240 months imprisonment to be followed by supervised release for life.

Date:  August 26, 2019                                    LISA PEEBLES
                                                          Federal Public Defender

                                              By:    */s/Timothy E. Austin*
                                                     Timothy E. Austin
                                                     Bar Roll No. 508098
                                                     Assistant Federal Public Defender
                                                     39 North Pearl Street
                                                     Albany, New York 12207
                                                     Tel:  (518) 436-1850
                                                     Fax: (518) 436-1780
                                                     Email: tim_austin@fd.org

To:    United States District Court Clerk
       Geoffrey Brown, Esq., AUSA
       Angela Bennett Rodriguez, Sr. USPO

## CERTIFICATE OF SERVICE

      I, Timothy E. Austin, Esq., hereby certify that on August 28, 2019, I filed the foregoing Sentencing Memorandum, with exhibit, by ECF, which sent notification to

      AUSA Geoffrey Brown

and I served the same upon AUSA Geoffrey Brown and upon Sr. USPO Angela M. Bennett Rodriguez by email of a copy of the same on August 26, 2019.

                                            LISA PEEBLES
                                            Federal Public Defender

By:   */s/Timothy E. Austin*
         Timothy E. Austin
         Bar Roll No. 508098
         Assistant Federal Public Defender
         39 North Pearl Street
         Albany, New York 12207
         Tel: (518) 436-1850
         Fax: (518) 436-1780
         Email: tim_austin@fd.org