```
                   UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA,        )
                                 )
                                 )    CASE NO.: 1:19-CR-74
                                 )
     vs.                         )
                                 )
BRUCE W. WILLIAMS,               )
              Defendant.         )
_____)


                   TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HON. THOMAS J. McAVOY
                   MONDAY, SEPTEMBER 9, 2019
                       ALBANY, NEW YORK



FOR THE GOVERNMENT:
     Office of the United States Attorney
     By:  Emmet J. O'Hanlon, AUSA
     445 Broadway, Room 218
     Albany, New York  12207


FOR THE DEFENDANT:
     Office of the Federal Public Defender
     By:  Timothy E. Austin, AFPD
     39 N. Pearl Street, 5th Floor
     Albany, New York  12207




          THERESA J. CASAL, RPR, CRR, CSR
            Federal Official Court Reporter
              445 Broadway, Room 509
               Albany, New York  12207

            THERESA J. CASAL, RPR, CRR
        UNITED STATES DISTRICT COURT - NDNY
```

1               (Court convened at 10:32 AM.)

2           THE CLERK:  United States of America versus

3  Bruce W. Williams, 19-CR-74.  May I have the appearance for

4  the Government.

5           MR. O'HANLON:  Good morning, your Honor.

6  Assistant U.S. Attorney Emmet O'Hanlon for the Government.

7           THE COURT:  Good morning again, Mr. O'Hanlon.

8           THE CLERK:  On behalf of the defendant.

9           MR. AUSTIN:  Tim Austin for Mr. Williams, who is

10 present, seated to my left.

11          THE COURT:  Good morning, Mr. Austin.  Good

12 morning, Mr. Williams.

13          THE DEFENDANT:  Good morning, your Honor.

14          THE CLERK:  Gentlemen, would you come forward to

15 the podium, please, and Mr. Williams, would you raise your

16 right hand.

17               (Defendant duly sworn.)

18          THE COURT:  All right.  The Court has received a

19 number of documents, as it always does in connection with a

20 sentencing, and of course, the presentence investigation

21 report, which is the key document, also sentencing memoranda

22 from the Government and from defendant.  And Mr. Austin,

23 that's one of the best sentencing briefs I've ever read in

24 33 years, so I just wanted to tell ya that.

25          MR. AUSTIN:  I appreciate that, Judge, thank you.

THE COURT: All right. I read 'em all the time and sometimes they sort of are repetitive and they're not analytical. Yours was very personal for Mr. Williams and got right down to what I think is important. So it really was a helpful memorandum.

Also, I got a letter from Mr. Williams' brother, Dennis, who wrote some nice things about him. And it's good to get material like that because the Court doesn't see the good things about a person, it's usually the things that are adverse that have to be put in the report to the Court so they'll know what to do in connection with the statutory requirements of sentencing. So, your brother's letter was appreciated; the Court, of course, reviewed it.

Mr. Austin, have you had an opportunity -- I know you have, but I have to ask you -- to review the presentence investigation report?

MR. AUSTIN: Yes, your Honor, and I've had enough time with Mr. Williams on that. Separate from that, if it's of concern for the Court, I wanted to take up the letter that Mr. Williams filed, docket number 39.

THE COURT: I haven't seen that.

MR. AUSTIN: Okay. So to the extent that there is in the record on the docket, document number 39, in which Mr. Williams expressed some concerns about my ongoing representation of him, I can tell the Court that whatever

1  issues might have been suggested by that letter, they've

2  been resolved, he and I have had a chance to talk about his

3  letter and my continuing representation, and Mr. Williams, I

4  understand, would be happy to tell the Court that he's

5  content to have me proceed as his lawyer and to go forward

6  with me as his lawyer for sentencing today.

7           THE COURT:  Is that right, Mr. Williams?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  You know, I guess I did see that

10 letter some time ago, and I read it over, and then I think I

11 made an inquiry and somebody told me that you were talking

12 with Mr. Williams and, hopefully, that would be productive

13 of either him wanting another lawyer or him agreeing to

14 proceed with you, and someone relayed the information back

15 to me that the problem was solved.

16          MR. AUSTIN:  Okay.

17          THE COURT:  So I guess that's why it went out of

18 my mind because it hasn't -- I got a lot of other things to

19 think about.

20          MR. AUSTIN:  Sure.

21          THE COURT:  So I apologize.

22          MR. AUSTIN:  So I did have enough time to talk to

23 Mr. Williams about the presentence report.

24          THE COURT:  Okay.  Mr. Williams, have you read the

25 presentence report?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Have you talked to Mr. Austin about
3   it?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Is there anything in that report you
6   want to point out to me that you think needs to be
7   protected?

8          MR. AUSTIN:  So, Judge, Mr. Williams is aware of
9   the contents of my position letter regarding the presentence
10  report, he understands that with respect to a single
11  sentencing guideline computation issue, I've expressed that
12  he doesn't concede the applicability of a five-level
13  increase for pattern of activity, but that we're not seeking
14  for the Court to resolve any facts underlying that, just not
15  conceding the facts that are articulated in the presentence
16  report.

17         And then with respect to some other factual issues
18  in the presentence report, we've indicated some objections
19  or clarifications, but I'm also not asking the Court to
20  conduct any hearings to resolve any of those facts.  Those
21  issues are raised more in the event that this Court decides
22  not to impose the agreed-upon sentence, in which case maybe
23  down the road they would become more of a live issue.

24         THE COURT:  Yeah, I think that's right.  This is
25  an 11(c)(1)(C) plea, so the important thing here is after

1  you guys analyze the PSR, the Government does, the Court
2  does; if the Court can agree to what you folks agreed to,
3  then the Court will issue a sentence that goes along with
4  that, and that's what I plan to to today, so hopefully that
5  will clear up any of those items that you have been
6  discussing.  So, what would you like to say on behalf of Mr.
7  Williams before I sentence him?
8            MR. AUSTIN:  Well, Judge, understanding that the
9  Court has fully digested our sentencing submissions, I think
10 it's clear that Mr. Williams is an example, maybe a tragic
11 example, of what might happen when a person as a child is
12 not protected, is not taken care of, is not supported by the
13 people charged with doing that.  He's come from a background
14 that's not just, you know, disadvantaged, in terms of
15 resources, but, you know, he didn't have people to protect
16 him from harm.  In fact, the people charged with doing that
17 were people inflicting harm upon him, and it's an
18 extraordinarily sad circumstance, but I think that has a lot
19 to do with why he stands here before you.
20           We're appreciative that the Government was willing
21 to take a close look at the background and circumstances and
22 consider the (c)(1)(C) plea agreement and we would, I think,
23 be in agreement with the Government that the agreed-upon
24 sentence is one the Court could impose for justifiable
25 reasons and I ask the Court to do that.

1       THE COURT:  All right.  The Court is sensitive to
2  those kinds of things because I have five children of my
3  own, we also took in five foster children and raised them --
4  actually, one I had to marry off twice, so that was a little
5  expensive -- but I understand when people come from homes
6  that are totally nonexistent in support.  When you're young,
7  that's when you're most impressionable, and those things
8  happened to ya and you can't do anything to go back and
9  change them, so they later reflect on what you may do later
10 on in life, even though some of those things are horrendous
11 criminal activity, it still is a reflection of what happened
12 earlier and the Court appreciates that, so that's one reason
13 why it plans on honoring the solution offered by the
14 11(c)(1)(C) plea.  Mr. O'Hanlon.
15      MR. O'HANLON:  Your Honor, given that this case is
16 being resolved with a (c)(1)(C) plea, the understanding that
17 the defendant will be sentenced to 240 months of
18 imprisonment, a lifetime term of supervised release upon his
19 release from that term of imprisonment, the special
20 assessment of $200 and the fine that may be determined by
21 the Court, as well as the restitution issue which I'm
22 prepared to take up after the Court imposes its sentence.
23      THE COURT:  Sure.
24      MR. O'HANLON:  The Government will rest on the
25 sentencing memoranda that it filed in this case.

1           THE COURT: All right.

2           MR. O'HANLON: Thank you, your Honor.

3           THE COURT: Mr. Williams, would you like to say

4  anything before I sentence you?

5           THE DEFENDANT: Just that I'm ready to take

6  responsibility for what I did and to let you sentence me

7  today.

8           THE COURT: All right. Well, that's the first

9  step, that's a good step, so the Court is happy to hear that

10 from you. Of course, I've reviewed all the information

11 submitted, as well as looking at the manual, taken into

12 account the statutory prescriptions in 18,   U.S. Code,

13 Section 3553(a), and of course, the Court is going to adopt,

14 under protest, the factual information and guideline

15 applications contained in the presentence investigation

16 report. Based on a total offense level of 42 and a criminal

17 history category of III, the guideline imprisonment range is

18 360 months to life. However, the statutorily authorized

19 maximum sentence is less than the maximum of the applicable

20 guideline range and, therefore, the guideline range is 360

21 to 480 months.

22          As outlined in the plea agreement and pursuant

23 to the 11(c)(1)(C) agreement, the agreed sentence is

24 240 months, with a term of supervised release of life and a

25 special assessment of $200, which will be determined by the

1  Court.  The agreed-upon sentencing also has to be amended

2  when we hear the information from both sides about the

3  restitution.

4  There's also an additional special assessment,

5  which the Court isn't gonna apply, of $5,000 in this case,

6  so the Court will agree that there's indigency, so it

7  doesn't have to apply that.

8  So, upon your plea of guilty to Counts 1 and 2

9  of the information, it's the judgment of the Court that

10 you're hereby committed to the custody of the Bureau of

11 Prisons for a period of 240 months on each of Counts 1

12 and 2, counts to run concurrently, for a total term of

13 imprisonment of 240 months.  The Court recommends that you

14 participate in sex offender treatment while in the Bureau of

15 Prisons.

16 Upon your release from imprisonment, you will be

17 placed on supervised release for life on each of Counts 1

18 and 2, terms to run concurrently.  While on supervised

19 release, you shall not commit another federal, state or

20 local crime and shall comply with the standard conditions

21 that have been adopted by this Court, as well as the

22 following special conditions which the Court finds are

23 necessary and justified in this case based on the nature of

24 the instant offense, as well as your history and

25 characteristics as outlined in detail in the presentence

*USA v. Williams – 19-CR-74*

1  investigation report:

2  Number one, you shall contribute to the cost of
3  any evaluation, testing, treatment and/or monitoring
4  services rendered in an amount to be determined by the
5  Probation Officer based on your ability to pay and the
6  availability of third-party payments.

7  Number two, you shall not have any direct contact
8  with any child you know or reasonably should know to be
9  under the age of 18, including your own three children,
10 without the permission of the Probation Officer.  If you do
11 have any direct contact with any child you know or
12 reasonably should know to be under the age of 18, including
13 your own children, without the permission of the Probation
14 Officer, you shall report this contact to the Probation
15 Officer within 24 hours.  Direct contact includes written
16 communication, electronic communication, in-person
17 communication and physical contact.  Direct contact does not
18 include incidental contact during ordinary daily life
19 activities in public places.

20 Number three, you shall not go to or remain at any
21 place where you know children under the age of 18 are likely
22 to be, including parks, school grounds -- schools,
23 playgrounds and child care facilities without the permission
24 of the Probation Officer.

25 Number four, you shall not go to or remain at a

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT – NDNY*

1  place for the primary purpose of observing or contacting
2  children under the age of 18.
3         Number five, you shall not communicate or
4  otherwise interact with Victim 1 or Victim 2, either
5  directly or through someone, without first obtaining the
6  permission of the Probation Officer.
7         Number six, you shall undergo a psychosexual
8  evaluation and, if recommended by the evaluator, you shall
9  perform -- excuse me, you shall participate in a mental
10 health treatment program, which may include, but will not be
11 limited to, participation in a sex offense specific
12 treatment program.  The Probation Office must approve the
13 location, frequency and duration of treatment.  You must
14 abide by the rules of the program.
15         Number seven, your supervision may include
16 examinations using a polygraph, computerized voice-stress
17 analyzer or other similar device to obtain information
18 necessary for supervision, case monitoring and treatment.
19 You shall answer the questions posed during the evaluation
20 subject to your right to challenge in a court of law the use
21 of such statements as violations of your Fifth Amendment
22 rights.  In this regard, you shall be deemed to have not
23 waived your Fifth Amendment rights.  The results of any
24 examinations shall be disclosed to the U.S. Probation Office
25 and the Court, but shall not be further disclosed without

1  the approval of the Court.

2  Number eight, you shall not use or possess any
3  computer, data storage device or any internet capable device
4  unless you participate in the Computer and Internet
5  Monitoring Program or unless authorized by the Court or the
6  U.S. Probation Office.  If placed in the Computer and
7  Internet Monitoring Program, you will comply with all the
8  rules of that program and pay the costs associated with the
9  program.  The U.S. Probation Office may use and/or install
10 any hardware or software system that is needed to monitor
11 your use of a computer or internet capable device.  You
12 shall permit the U.S. Probation Office to conduct periodic,
13 unannounced examinations of any computer equipment,
14 including any data storage device and internet capable
15 device you use or possess.  This equipment may be removed by
16 the U.S. Probation Officer or their designee for a more
17 thorough examination.  You may be limited to possessing one
18 personal internet capable device to facilitate the U.S.
19 Probation Office's ability to effectively monitor your
20 internet related activities.

21 Number nine, if your employment requires the use
22 of a computer, you may use a computer in connection with the
23 employment, your employment, approved by the Probation
24 Officer, at your place of employment, provided you notify
25 your employer of the nature of your conviction and the fact

1  that your conviction was facilitated by the use of a
2  computer.  The Probation Office must confirm your compliance
3  with this notification requirement.
4        Ten, while in treatment and for the remainder of
5  the term of supervision following completion of treatment,
6  you shall not view, possess, own, subscribe to or purchase
7  any material, including pictures, videotapes, films,
8  magazines, books, telephone services, electronic media,
9  computer programs or computer services that depict
10 sexually explicit conduct as defined in 18, U.S. Code,
11 Section 2256(2).
12       Number eleven, you shall participate in a mental
13 health program, which may include medical, psychological
14 and/or psychiatric evaluation and outpatient treatment as
15 recommended by the treatment provider based on your risk and
16 needs.  You may also be required to participate in inpatient
17 treatment upon recommendation of the treatment provider and
18 approval of the Court.  The Probation Officer shall approve
19 the location, frequency and duration of outpatient
20 treatment.  You must abide by the rules of the program,
21 which may include a medication regime.  You shall contribute
22 to the cost of any evaluation and/or treatment in an amount
23 to be determined by the Probation Officer based on your
24 ability to pay and the availability of third-party payments.
25       The Court is reserving its right to impose

1  restitution at this time.  Restitution in the amount of
2  $13,136.40 has been requested.  Court finds that would be
3  excessive and will later, after receiving information from
4  the Government and defense counsel, resolve and order the
5  restitution payments.
6              The Courts finds based on your financial
7  resources, including the restitution obligation to be
8  imposed, that you do not have the ability to pay a fine or
9  the additional special assessment outlined in 18, U.S. Code,
10 Section 3014.  You shall pay to the Clerk of the Court a
11 special assessment of $200, which is due and payable
12 immediately.
13             Consistent with the agreed-upon disposition in the
14 case, you'll consent to an entry of forfeiture to the items
15 outlined in the preliminary order of forfeiture.
16             Both you and the Government have the right to
17 appeal this sentence under certain circumstances, except as
18 restricted by your waivers of appeal.  I guess because this
19 is an 11(c)(1)(C) plea agreement, you don't really have any
20 right to appeal your sentence, but I can't answer that, the
21 Appellate Court can answer that.  You're advised to consult
22 with your attorney to determine whether or not an appeal is
23 warranted.  Any appeal you take must be filed within 14 days
24 of the date of the filing of the judgment in this case.
25             Outside of the restitution issue, is there

*USA v. Williams - 19-CR-74*

1  anything further from the Government?
2       MR. O'HANLON:  Your Honor, if I might have a
3  moment to confer with defense counsel?
4       THE COURT:  Sure.  Take your time.
5            (Pause in proceedings.)
6       MR. O'HANLON:  Your Honor, having conferred with
7  defense counsel and having observed that defense counsel
8  conferred with the defendant, there is an agreement that the
9  Government has run past counsel for the two named victims
10 who were seeking restitution based on their images being
11 depicted in child pornography that was distributed and/or
12 received by the defendant.
13      Specifically, for the victim "Pia," P-I-A, the
14 amount is $2,000 --
15      THE COURT:  Okay.
16      MR. O'HANLON:  -- and for the victim identified in
17 the presentence investigation report as "Tara," T-A-R-A,
18 that amount is $3,000.
19      THE COURT:  All right.  Once again, the Court
20 finds, based on your financial resources, projected earnings
21 and other income, as well as your obligations, that ya have
22 the ability to pay restitution.  Restitution -- as I
23 indicated, they requested 13,136.  The Court finds that
24 restitution in the amounts as follows to be sufficient and
25 necessary:  For the victim "Tara," $3,000; for the victim

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

1  "Pia," $2,000.  This restitution is due immediately, with
2  any remaining restitution payable at a minimal rate of
3  25 percent of your gross income while incarcerated and a
4  minimal rate of a hundred dollars per month or 10 percent of
5  your gross income, whichever is greater, upon your release
6  from imprisonment.  If, at any time, you have the resources
7  to pay full restitution, you must do so immediately.  All
8  payments are to be forwarded to United States District Court
9  in Syracuse, New York.
10              Anything further from the Government?
11              MR. O'HANLON:  No, thank you, your Honor.
12              THE COURT:  Defense counsel?
13              MR. AUSTIN:  Judge, I'd ask the Court to
14  recommend placement by the Bureau of Prisons in a facility
15  as close as possible to the Capital District, which is
16  where Mr. Williams would hope to be released.
17              THE COURT:  Okay.  The Court agrees with defense
18  counsel and will request the Bureau of Prisons to place
19  Mr. Williams in a facility as close to the Capital District
20  in the State of New York as is possible.
21              Anything further?
22              MR. AUSTIN:  No, thank you, Judge.
23              THE COURT:  Court stands adjourned in this matter.
24                    (This matter adjourned at 10:55 AM.)
25                            - - - - -

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

CERTIFICATION OF OFFICIAL REPORTER

I, THERESA J. CASAL, RPR, CRR, CSR, Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 25th day of September, 2019.

**/s/ THERESA J. CASAL**

THERESA J. CASAL, RPR, CRR, CSR

FEDERAL OFFICIAL COURT REPORTER

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT – NDNY*